# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Elisha Valdez | John Wetzel, et al. |

| **(b)** County of Residence of First Listed Plaintiff Westmoreland | County of Residence of First Listed Defendant Cumberland |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Riley H. Ross III and Kevin V. Mincey - Mincey Fitzpatrick Ross, LLC
1500 JFK Blvd Suite 1525 Philadelphia, PA 19102
215-587-0006

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983
Brief description of cause:
Plaintiff was sexually assaulted by inmate in state prison. Defendants failed to protect him.

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ > $1 million | CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes  ☐ No |
|---|---|---|---|

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

| DATE 04/22/2020 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ELISHA VALDEZ, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. _____ |
| v. | : | |
| | : | **Jury Trial Demanded** |
| JOHN E. WETZEL | : | |
| KEVIN KAUFFMAN | : | |
| MANDY BISER SIPPLE | : | |
| SERGEANT JOHN DOE | : | |
| JOHN DOES 1-5 | : | |
| JOHN DOES 6-10 | : | |
| JOHN DOES 11-15 | : | |
| | : | |
| Defendants | : | |

## COMPLAINT

## I.    Introduction

1.      Plaintiff Elisha Valdez brings this civil action seeking damages pursuant to 42 U.S.C. §§ 1983 and 1988, the United States Constitution and Pennsylvania Law against various prison officials at the State Correctional Institute at Huntingdon, PA (hereinafter "SCI Huntingdon") for depriving him of his rights guaranteed by the Eighth and Fourteenth Amendments of the United State Constitution and the Constitution of the Commonwealth of Pennsylvania.

2.      Officials at SCI Huntingdon and the Pennsylvania Department of Corrections ("DOC"), *inter alia*, Secretary of the DOC John Wetzel, Superintendent of SCI Huntingdon Kevin Kauffman, and the Prison Rape

Elimination Act Compliance Manager Mandy Biser Sipple failed to properly protect Plaintiff, violating his Eighth and Fourteenth Amendment Rights, when they did not properly train and supervise and discipline correctional staff on how to identify potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates and failed to implement certain policies to protect inmates like Plaintiff.

3. Additionally, Sergeant John Doe and John Does 1-15 failed to protect Plaintiff in violation of his Eighth and Fourteenth Amendment rights when they placed a violent sexual predator in his cell despite knowing the danger the inmate posed to Plaintiff.

## II. <u>Jurisdiction</u>

4. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, in that it raises questions of federal law, pursuant to the United States Constitution and other federal laws governing civil rights, including 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction over the pendent State Law claims pursuant to 28 U. S. C. §1367(a) where the state claims are so related to federal claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue in the Middle District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391 in so far as the following alleged unlawful conduct that forms the factual and legal bases of this Complaint occurred within the geographical limits of this District.

## III. <u>Parties</u>

6. Plaintiff Elisha Valdez is an adult male who at the time of the incident alleged in this Complaint was incarcerated at SCI Huntingdon for violating the terms of his probation after being convicted of Robbery.

7. Defendant John Wetzel (hereinafter "Defendant Wetzel") was the Secretary of the Pennsylvania Department of Corrections at all times relevant to the Complaint and, as such, was the ultimate authority in overseeing the training of correctional staff throughout the Pennsylvania prison system.

8. Defendant Kevin Kauffman (hereinafter "Defendant Kauffman") was the Superintendent of SCI Huntingdon at all times relevant to the Complaint and, as such, was the ultimate authority in overseeing the training of correctional officers at SCI Huntingdon in the rules, regulations and best practices in cell assignments and in protecting inmates from physical and sexual assault.

9. Defendant Mandy Biser Sipple (hereinafter "Defendant Biser

Sipple") was the SCI Huntingdon Corrections Classification Program Manager at all times relevant to this action, and it was her responsibility to, *inter alia*, serve as the Prison Rape Eliminate Act Compliance Manager for SCI Huntingdon and to ensure that all staff at SCI Huntingdon were properly trained in preventing inmates from being sexually assaulted.

10.     Defendant Sergeant John Doe was a correctional officer at SCI Huntingdon at all times relevant to this action.  Defendant Sergeant John Doe informed Plaintiff that Omar Johnson would be moving into his cell.

11.     Defendants John Does 1-5 (collectively, the "Initial Review Committee") were members of the Initial Review Committee and responsible for evaluating and processing cell assignments at SCI Huntingdon at all times relevant to this action.

12.     Defendants John Does 6-10 (collectively, the "Unit Management Staff") were members of the Unit Management Staff and at all times relevant to this action responsible for evaluating and processing inmates for cell assignments by, *inter alia*, reviewing and analyzing the records of inmates to determine whether there is an imbalance of power between the inmates that could lead to victimization of the weaker inmate.

13.     Defendants John Doe 11-15 (collectively with Defendant

4

Sergeant John Doe, the "Correctional Officers") were correctional officers at SCI Huntingdon at all times relevant to this action .

14.     At all times relevant to this action, Plaintiff was under the supervision and care of the DOC, the staff of SCI Huntingdon and the individual defendants named in this action.

15.     All Defendants acted under color of state law at all times relevant to the Complaint.  All defendants are sued in their individual capacities.

## IV.   Facts

### Plaintiff, a Non-Violent Offender, is Forced to Share a Cell with a Violent Sexual Predator

16.     On or about April 16, 2018, Mr. Valdez arrived at SCI-Huntingdon after receiving a prison sentence for the violation of the terms of his probation stemming from a robbery conviction.

17.     Plaintiff's initial cell assignment was with Inmate Antwon Palmer in cell 1007 on D Block.

18.     However, on April 23, 2018, Defendants, including the Initial Review Committee and the Unit Management Staff, removed Inmate Palmer from the cell and placed Inmate Omar Johnson in the cell with Plaintiff.

19.     Defendant Sergeant John Doe told Plaintiff that Omar Johnson was being placed in his cell because cell 1007's placement on D Block near the

guard desk made it easier to get Johnson to his early morning work shift in the kitchen.

20. Based on the polices of the Pennsylvania Department of Corrections, Sergeant John Doe, the Initial Review Committee and Unit Management Staff knew that Omar Johnson posed a substantial risk to Plaintiff but failed to take any action to protect Plaintiff.

21. On April 23, 2018, Defendants were well aware that Omar Johnson had a lengthy criminal record of multiple rapes and other violent offenses.

22. Indeed, at the time, Omar Johnson was serving a lengthy prison sentence at SCI Huntington for kidnapping and rape.

23. Additionally, a SCI-Huntingdon Correctional Officer later told Plaintiff that Omar Johnson had previously attempted to rape a counselor at SCI Rockview.

24. Upon information and belief, despite Omar Johnson's history of violent behavior inside and outside of prison, prison officials did not place Omar Johnson on "Z" code status, which would have resulted in a single cell designation and protected Plaintiff and other inmates.

25. Upon information and belief, at the time, Omar Johnson was 48

years-old, stood approximately 6'2" tall and weighed over 200 pounds.

26.    Conversely, at the time Mr. Valdez entered Huntingdon he was 19 years old, stood 5'7" tall and weighed approximately 160 pounds.

**Plaintiff is Violently Raped the First Night He is Celled with Johnson**

27.    After Omar Johnson was placed into Mr. Valdez' cell, Mr. Valdez did not speak to Johnson.

28.    After the 9:00 pm count, Mr. Valdez got up from his bed to use the bathroom.  At that time, Omar Johnson put his arm around Mr. Valdez and told Mr. Valdez that if he made any noise, Johnson would kill him.  For the next 10-20 minutes, Omar Johnson raped Mr. Valdez in their cell.

29.    When he was finished, Omar Johnson cleaned himself, went to his bed and fell asleep.

30.    Mr. Valdez was terrified and remained awake for the rest of the night.

31.    Early the following morning, Omar Johnson was removed from his cell for his kitchen shift as planned.

32.    During the 6 am count, Mr. Valdez passed a note to the Correctional Officer conducting the count, informing him that Mr. Valdez had been raped.

33.     Mr. Valdez was then removed from his cell and taken to medical.

34.     Within hours, Mr. Valdez was relocated to B Block.

35.     Word apparently spread about Mr. Valdez' sexual assault. While on B Block, a Correctional Officer told Mr. Valdez that Omar Johnson had attempted to rape a counselor at SCI Rockview.

36.     Additionally, several inmates told Mr. Valdez that Omar Johnson had raped other inmates at SCI Huntingdon.

37.     Mr. Valdez filed grievances relating to his rape but he was never informed of the status of the grievances nor of the status of any investigation into the rape.

38.     Approximately one year later, Mr. Valdez was transferred to SCI Coal Township.

39.     Mr. Valdez was recently released form SCI Coal Township and currently resides in Jeannette, PA.

40.     To date, no official connected with SCI Huntingdon has informed Mr. Valdez of the status or outcome of any investigation into the rape.

**The Pennsylvania Department of Corrections is Aware of the Dangers of Inmate-on-Inmate Sexual Assault**

41.     Information about inmate-on-inmate sexual assault is

presented to employees of the Pennsylvania Department of Corrections ("PA DOC") through the Department's measures to enforce the Prison Rape Elimination Act (PREA).

42.     In a PREA video found on PA DOC's website, Defendant Wetzel states that the PA DOC is committed to the elimination of rape and sexual assault in Pennsylvania prisons.

43.     PA DOC's PREA Annual Report for 2017 ("2017 Annual Report") found that 699 allegations of inmate-on-inmate sexual abuse or harassment were made at PA DOC facilities.

44.     PA DOC's PREA Annual Report for 2018 ("2018 Annual Report") found that 779 allegations of inmate-on-inmate sexual abuse or harassment were made at PA DOC facilities.

45.     Each Annual Report provides details about the specific incidents alleged by inmates.

46.     In 2017, there were 149 allegations of inmate-on-inmate nonconsensual sexual acts at PA DOC facilities.

47.     There were 168 allegations of inmate-on-inmate nonconsensual sexual acts in 2018.

48.     In 2013, just 5 years earlier, there were 50 allegations of

9

inmate-on-inmate nonconsensual sexual acts at PA DOC facilities.

49.     In 2017, there were 23 allegations of inmate-on-inmate nonconsensual acts, abusive sexual contacts or sexual harassment made at SCI-Huntingdon.

50.     In 2018, there were 11 allegations of inmate-on-inmate nonconsensual acts, abusive sexual contacts or sexual harassment made at SCI-Huntingdon.

51.     In 2013, just 5 years earlier, there were 5 allegations of inmate-on-inmate nonconsensual sexual acts at SCI-Huntingdon.

52.     The Annual Reports reference the importance of PA DOC improving the reporting methods of PREA allegations.

53.     Indeed, the 2017 Annual Report explains that PA DOC expanded its PREA training efforts in its prisons in 2017.

54.     PA DOC's Procedures Manual(s) in place from 2013 - 2018 set forth policies that highlight and attempt to address the dangers of inmate-on-inmate sexual assault.

55.     The Procedures Manual informs PA DOC employees of the prevalence of inmate-on-inmate sexual assault including reporting that a study of seven men's prisons in four mid-western states found that 21% of the inmates

surveyed admitted they had experienced at least one episode of pressured or forced sexual contact since being incarcerated.

56.     The Procedures Manual informs employees of PA DOC of the tendency of men to not report being the victim of sexual including reporting that up to 90% of males who are raped will never report their assaults to authorities.

57.     The Procedures Manual informs PA DOC employees of characteristics of sexually aggressive inmates.

58.     Omar Johnson has some of these characteristics including, medium to large build; possessing physical strength; aggressive in nature; incarcerated for violent offenses; having difficulty controlling anger; and doing a substantial amount of time.

59.     The Procedure Manual informs PA DOC employees of characteristics of an inmate who may be targeted as a victim of sexual assault.

60.     Plaintiff has some of these characteristics including being of small build; being young; and not strong in appearance.

**SCI Huntingdon Staff Housed Plaintiff with Omar Johnson Despite Their Own Policy, Which Indicated that Plaintiff was at Serious Risk of Sexual Assault by Omar Johnson**

61.     As stated above, Defendants John Doe 1-5 (collectively, the "Initial Review Committee") were members of the Initial Review Committee and

were responsible for processing inmates like Plaintiff for cell assignment.

62.     As stated above, Defendants John Doe 6-10 (collectively, the "Unit Management Staff") were members of the Unit Management Staff and were responsible for processing inmates like Plaintiff for cell assignment.

63.     As stated above, Sergeant John Doe and John Doe 11-15 (collectively, the "Correctional Officers") were charged with overseeing the inmates of SCI-Huntingdon.

64.     Upon information and belief, the Initial Review Committee, the Unit Management Staff and the Correctional Officers were among the individuals that made the decision to move Omar Johnson into Plaintiff 's cell despite knowing that Omar Johnson posed a serious risk of sexually assaulting Plaintiff given the characteristics of both.

65.      As stated above, Omar Johnson has the characteristics of a sexually aggressive inmate, as defined by PA DOC's Procedures Manual.

66.     As stated above, Plaintiff has the characteristics of an inmate who may be targeted as a sexual assault victim, as defined by PA DOC's Procedures Manual.

67.     Additionally, the Initial Review Committee, the Unit Management Staff and the Correctional Officers were aware that Omar Johnson

had previously raped or attempted to rape more than one inmate and a PA DOC counselor.

68.     Despite this knowledge, the Initial Review Committee, the Unit Management Staff and the Correctional Officers made the decision to house Plaintiff with Omar Johnson.

69.     Furthermore, despite the knowledge of Omar Johnson's dangerousness, the Initial Review Committee, the Unit Management Staff and the Correctional Officers failed to assign Omar Johnson with a Z-code status or otherwise prevent him from being celled with another inmate.

70.     This failure also led to the decision to house Plaintiff with Omar Johnson.

71.     Lastly, the Initial Review Committee, the Unit Management Staff and the Correctional Officers knew or should have known that Plaintiff was especially vulnerable to sexual assault because of such factors as his age, size and appearance.

72.     Despite this knowledge, the Initial Review Committee, the Unit Management Staff and the Correctional Officers failed to keep Plaintiff from being housed with Omar Johnson.

**Those Charged with Creating and Implementing Policy and with
Overseeing the Training and Supervision and Discipline of Employees of
SCI Huntingdon Failed to Implement Adequate Policies and Failed to
Train, Supervise and Discipline Correctional Officers**

73.     Defendant Kauffman, as the superintendent of SCI Huntingdon, was responsible for the training and supervision of the staff at SCI Huntingdon, including the Initial Review Committee, the Unit Management Staff and the Correctional Officers.

74.     Defendant Kauffman was aware, through PA DOC Annual Reports and Procedures Manuals, of the prevalence of inmate-on-inmate sexual assaults at SCI Huntingdon and dangers posed to certain inmates such as Plaintiff.

75.     Defendant Kauffman failed to provide the proper training and supervision and discipline necessary to ensure that SCI Huntingdon staff could protect inmates such as Plaintiff from inmate-on-inmate sexual assault.

76.     Despite knowing that sexual assaults were a common phenomenon, and despite knowing the importance of identifying potential perpetrators and potential victims of inmate-on-inmate sexual assaults, Defendant Kauffman failed to provide training to SCI Huntingdon staff on how to identify potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates.

14

77.     As examples, Defendant Kauffman failed to do the following:

- Provide training on how to identify potential sexual perpetrators and assign them a Z-code or equivalent designation to prevent them from being housed with others; and

- Create and implement policies to re-evaluate existing inmates for risks of sexually assaulting an inmate before housing them with a new inmate.

78.     Even if such trainings and policies were provided, Defendant Kauffman failed to properly supervise SCI Huntingdon staff to ensure the trainings were implemented and being used and to ensure that staff were properly disciplined for failing to utilize such trainings.

79.     Defendant Kauffman knew or should have known by its obviousness that failing to train SCI Huntingdon staff on how to identify potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates would create a greater risk of harm to inmates like Plaintiff, who were housed with sexual perpetrators.

80.     Defendant Kauffman's failure to provide trainings and supervision and discipline to SCI Huntingdon staff caused the Initial Review

Committee, the Unit Management Staff and the Correctional Officers to place Omar Johnson in Plaintiff's cell.

81.     Defendant Kauffman's failure to provide trainings and supervision and discipline to SCI Huntingdon staff caused the Initial Review Committee, the Unit Management Staff and the Correctional Officers to fail to protect Plaintiff from Omar Johnson's sexual assault.

82.     Defendant Wetzel, as the Secretary of the Pennsylvania Department of Corrections, and final decision-maker for the DOC, was responsible for the training and supervision of all Pennsylvania correctional staff including the Initial Review Committee, the Unit Management Staff and the Correctional Officers.

83.     Defendant Wetzel was aware, through PA DOC Annual Reports and Procedures Manuals, of the prevalence of inmate-on-inmate sexual assaults at PA DOC facilities and the dangers posed to certain inmates, such as Plaintiff.

84.     Indeed, at the time Omar Johnson raped Plaintiff, Defendant Wetzel was in the third year of a lawsuit alleging that his failure to provide proper training to correctional officers at SCI Smithfield led to Darren Coleman being housed with a sexually violent predator who repeatedly sexually assaulted Mr. Coleman on his first night in the prison.

85.     Defendant Wetzel failed to provide the proper training and supervision and discipline necessary to ensure that SCI Huntingdon staff could protect inmates such as Plaintiff from inmate-on-inmate sexual assault.

86.     Despite knowing that sexual assaults were a common phenomenon, and despite knowing the importance of identifying potential perpetrators and potential victims of inmate-on-inmate sexual assaults, Defendant Wetzel failed to provide training to SCI Huntingdon staff on how to identify potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates.

87.     As examples, Defendant Wetzel failed to do the following:

• Provide training on how to identify potential sexual perpetrators and assign them a Z-code or equivalent designation to prevent them from being housed with others; and

• Create and implement policies to re-evaluate existing inmates for risks of sexually assaulting an inmate before housing them with a new inmate.

88.     Even if such trainings and policies were provided, Defendant Wetzel failed to properly supervise SCI Huntingdon staff to ensure the trainings

17

were implemented and being used and to ensure that staff were properly disciplined for failing to utilize such trainings.

89.     Defendant Wetzel knew or should have known by its obviousness that failing to train SCI Huntingdon staff on how to identify potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates would create a greater risk of harm to inmates like Plaintiff, who were housed with sexual perpetrators.

90.     Defendant Wetzel's failure to provide trainings and supervision and discipline to SCI Huntingdon staff caused the Initial Review Committee, the Unit Management Staff and the Correctional Officers to place Omar Johnson in Plaintiff's cell.

91.     Defendant Wetzel's failure to provide trainings and supervision and discipline to SCI Huntingdon staff caused the Initial Review Committee, the Unit Management Staff and the Correctional Officers to fail to protect Plaintiff from Omar Johnson's sexual assault.

92.     Defendant Biser Sipple, as the SCI Huntingdon Corrections Classification Program Manager, was responsible for coordinating and ensuring SCI Huntingdon's compliance with PA DOC and federal PREA Standards, which included the training and supervision of the correctional staff at SCI Huntingdon,

including the Initial Review Committee, the Unit Management Staff and the Correctional Officers.

93.     Defendant Biser Sipple was aware, through PA DOC Annual Reports and Procedures Manuals, of the prevalence of inmate-on-inmate sexual assaults at PA DOC facilities and the dangers posed to certain inmates, such as Plaintiff.

94.     Indeed, at the time Omar Johnson raped Plaintiff, Defendant Biser Sipple was in the third year of a lawsuit alleging that her failure to provide proper training to correctional officers at SCI Smithfield led to Darren Coleman being housed with a sexually violent predator who repeatedly sexually assaulted Mr. Coleman on his first night in the prison.

95.     Mr. Coleman's case was tragically similar to Mr. Valdez' case in that Mr. Coleman, a small and light weight man in SCI Smithfield for a probation violation, was wrongly housed with a man serving a long prison sentence for a sexually violent crime.  The man had even threatened to violently hurt his next cellmate weeks before Mr. Coleman was placed in his cell.

96.     At the time that Mr. Valdez was being raped by Omar Johnson, a Federal Judge had denied Defendants Wetzel and Biser Sipple's attempt to be dismissed from Mr. Coleman's lawsuit on grounds that they were entitled to

qualified immunity.

97.     Defendant Biser Sipple failed to provide the proper training and supervision and discipline necessary to ensure that SCI Huntingdon staff could protect inmates such as Plaintiff from inmate-on-inmate sexual assault.

98.     Despite knowing that sexual assaults were a common phenomenon, and despite knowing the importance of identifying potential perpetrators and potential victims of inmate-on-inmate sexual assaults, Defendant Biser Sipple failed to provide training to SCI Huntingdon staff on how to identify potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates.

99.     As examples, Defendant Biser Sipple failed to do the following:

- Provide training on how to identify potential sexual perpetrators and assign them a Z-code or equivalent designation to prevent them from being housed with others; and

- Create and implement policies to re-evaluate existing inmates for risks of sexually assaulting an inmate before housing them with a new inmate.

100.    Even if such trainings and policies were provided, Defendant

Biser Sipple failed to properly supervise SCI Huntingdon staff to ensure the trainings were implemented and being used and to ensure that staff were properly disciplined for failing to utilize such trainings.

101.     Defendant Biser Sipple knew or should have known by its obviousness that failing to train SCI Huntingdon staff on how to identify potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates would create a greater risk of harm to inmates like Plaintiff, who were housed with sexual perpetrators.

102.     Defendant Biser Sipple's failure to provide trainings and supervision and discipline to SCI Huntingdon staff caused the Initial Review Committee, the Unit Management Staff and the Correctional Officers to place Omar Johnson in Plaintiff's cell.

103.     Defendant Biser Sipple's failure to provide trainings and supervision and discipline to SCI Huntingdon staff caused the Initial Review Committee, the Unit Management Staff and the Correctional Officers to fail to protect Plaintiff from Omar Johnson's sexual assault.

### Plaintiff Suffered and Continues to Suffer from Severe Injuries

104.     As a result of the sexual assault, Plaintiff has experienced Severe Depression, Anxiety, Post-Traumatic Stress Disorder and anger.  He has

suffered from persistent nightmares, an inability to sleep, embarrassment and at times has had suicidal thoughts.

105.     Because of this incident, Plaintiff received counseling during the rest of his imprisonment at PA DOC.  Upon his release, Plaintiff has sought treatment for his injuries.  However, the COVID-19 pandemic is making it extremely difficult to obtain treatment.

## COUNT I
## FEDERAL CIVIL RIGHTS VIOLATION:
## 42 U.S.C. § 1983, Violation of the Eighth and Fourteenth Amendments
## Failure to Protect
## (Plaintiff v. the Correctional Officers)

106.     Plaintiff incorporates all previous paragraphs by reference as if they were stated herein.

107.      Plaintiff seeks damages from the Correctional Officers (Defendants Sergeant John Doe and John Doe 11-15), who, at all times relevant to this Complaint, acted under color of state law.

108.     At all times relevant to this Complaint, pursuant to the Eighth Amendment of the United States Constitution as applied by the Fourteenth Amendment of the United States Constitution, Plaintiff had the right to be free from cruel and unusual punishment while incarcerated at SCI Huntingdon.

109.     Plaintiff had a right to be free from physical aggression, sexual

22

abuse, mistreatment and unnecessary suffering and distress while incarcerated at SCI Huntingdon.

110.     Defendants acted with malice and /or deliberate indifference when they placed and/or left Omar Johnson in the same cell with Plaintiff, knowing that Omar Johnson posed an immediate and substantial risk of serious harm to Plaintiff.

111.     During the times relevant to this Complaint, when Plaintiff was subjected to the cruel physical, sexual and emotional abuse of Omar Johnson, the Correctional Officers, pursuant to the Eighth and Fourteenth Amendments, were required to provide an environment free from physical, emotional and sexual abuse by other inmates.

112.     The Correctional Officers were compelled, pursuant to the Eighth and Fourteenth Amendments, to protect Plaintiff from Omar Johnson by preventing Omar Johnson from becoming Plaintiff's cellmate.

113.     The Correctional Officers were deliberately indifferent to the substantial risks of serious harm to Plaintiff.

114.     As a direct and proximate result of the actions and/or omissions of the Correctional Officers, Plaintiff suffered and continues to suffer:

        a. Post Traumatic Stress Disorder including feelings of fear,

anxiety and extreme mental anguish;

b.  Humiliation, degradation and embarrassment;

c.  Severe and ongoing depression; and

d.  The inability to form romantic attachments.

115.    Plaintiff would not have suffered these harms if the Correctional Officers had not been deliberately indifferent.

116.    Through the aforementioned acts and omissions, the Correctional Officers have deprived Plaintiff of his rights secured by the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Correctional Officers and grant him all appropriate relief, including, but not limited to, compensatory damages, court costs, punitive damages, attorney fees and all other relief as it deems appropriate.

## COUNT II
## FEDERAL CIVIL RIGHTS VIOLATIONS:
## 42 U.S.C. § 1983, Violation of the Eighth and Fourteenth Amendments
## Failure to Protect
**(Plaintiff v. the Initial Review Committee and the Unit Management Staff)**

117.    Plaintiff incorporates all previous paragraphs by reference as if they were stated herein.

118.     Plaintiff seeks damages from the Initial Review Committee (Defendant John Doe 1-5) and the Unit Management Staff (Defendant John Doe 6-10), who, at all times relevant to this Complaint, acted under color of state law.

119.     As the individuals tasked with the processing of inmates for double celling, the Initial Review Committee and the Unit Management Staff made the decision to pair Plaintiff with the known violent prisoner Omar Johnson.

120.     Forcing Plaintiff to be cellmates with the known violent prisoner Omar Johnson created, a substantial risk of serious harm to Plaintiff, who was small, and young.

121.     The Initial Review Committee and the Unit Management Staff knew of this substantial risk of serious harm and were deliberately indifferent to that risk.

122.     The policies that direct and govern the actions of the Initial Review Committee and the Unit Management Staff make it clear that housing prisoners like Plaintiff with violent prisoners creates a risk of serious harm to the prisoners like Plaintiff as the polices direct the Initial Review Committee and the Unit Management Staff to thoroughly consider the records and characteristics of the inmates to be housed together, and to determine if an imbalance of power

25

exists between to the two inmates that could lead to victimization of the weaker inmate.

123.     The Initial Review Committee and the Unit Management Staff failed to designate Omar Johnson with a Z-code or equivalent designation to prevent him double celling with Plaintiff.

124.     Moreover, upon information and belief, the Initial Review Committee and the Unit Management Staff failed to evaluate or reevaluate Omar Johnson to determine whether it was appropriate to house him with Plaintiff.

125.     As a matter of practice and policy, the Initial Review Committee and the Unit Management Staff do not evaluate existing inmates to determine their suitability to house with new inmates.

126.     Through their actions and failures to act, the Initial Review Committee and the Unit Management Staff deprived Plaintiff of his rights secured by the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

127.     Plaintiff would not have suffered the harm detailed above had the Initial Review Committee and the Unit Management Staff not been deliberately indifferent.

128.     Plaintiff's injuries and damages were a direct and proximate

result of the decision of the Initial Review Committee and the Unit Management

Staff to house Plaintiff with Omar Johnson.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment

against the Initial Review Committee and the Unit Management Staff and grant

him all appropriate relief, including, but not limited to, compensatory damages,

court costs, punitive damages, attorney fees and all other relief as it deems

appropriate.

### COUNT III
### FEDERAL CIVIL RIGHTS VIOLATIONS:
### 42 U.S.C. § 1983, Violation of the Eighth and Fourteenth Amendments
### Failure to Train and Supervise and Discipline
### (Plaintiff v. Defendants John Wetzel, Kevin Kauffman, and Mandy Biser Sipple)

129.    Plaintiff incorporates all previous paragraphs by reference as

if they were stated herein.

130.    The actions and inactions of the Initial Review Committee, the

Unit Management Staff and the Correctional Officers, which led to the sexual

assault of Plaintiff, were the direct result of a failure to properly train and

supervise and discipline correctional staff at SCI Huntingdon.

131.    Defendants Wetzel, Kauffman and Biser Sipple failed to

properly supervise their subordinates when they failed to implement and enforce

27

polices that trained correctional staff on how to identify potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates.

132.     Defendants Wetzel, Kauffman and Biser Sipple were aware of the prevalence of inmate-on-inmate sexual assaults at SCI Huntingdon and PA DOC polices implemented and enforced by them shows that they knew of the importance of preventing such assaults at SCI Huntingdon.  Defendants Wetzel and Biser Sipple also knew of such prevalence through a lawsuit in which they were active defendants at the time Mr. Valdez was raped by Omar Johnson.

133.     Despite knowing the importance of preventing sexual assaults at SCI Huntingdon, Defendants Wetzel, Kauffman and Biser Sipple failed to implement and/or enforce policies to facilitate the identification of potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates.

134.     Defendants Wetzel, Kauffman and Biser Sipple also failed to provide training on how to identify potential sexual perpetrators and assign them a Z-code or equivalent designation to prevent them from being housed with others.

135.      Defendants Wetzel, Kauffman and Biser Sipple also failed to

create and implement policies to re-evaluate existing inmates for risks of sexually

assaulting an inmate before housing them with a new inmate.

136.    It was obvious to Defendants Wetzel, Kauffman and Biser

Sipple that failing to train SCI Huntingdon staff on how to identify potential

perpetrators and potential victims of inmate-on-inmate sexual assaults and to

prevent them from being cellmates would create a greater risk of harm to

inmates like Plaintiff, who were housed with sexual perpetrators.

137.    Defendants Wetzel, Kauffman and Biser Sipple had actual

knowledge that separating potential perpetrators and potential victims of

inmate-on-inmate sexual assaults was tantamount to preventing sexual assaults

because the PA DOC polices stressed the importance of not housing such inmates

together.

138.    Therefore, Defendants Wetzel, Kauffman and Biser Sipple's

failure to implement and/or enforce policies on how to identify potential

perpetrators and potential victims of inmate-on-inmate sexual assaults and to

prevent them from being cellmates showed deliberate indifference to and a

conscious disregard of the rights of Plaintiff.

139.    Defendants Wetzel, Kauffman and Biser Sipple deprived

Plaintiff of his rights and privileges secured under the Eighth and Fourteenth

Amendments, which guarantee his right to be free from cruel and unusual punishment.

140.    Plaintiff's injuries and damages were a direct and proximate result of Defendants Wetzel, Kauffman and Biser Sipple's failure train the Initial Review Committee, the Unit Management Staff and the Correctional Officers on how to identify potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Wetzel, Kauffman and Biser Sipple and grant him all appropriate relief, including, but not limited to, compensatory damages, court costs, punitive damages, attorney fees and all other relief as it deems appropriate.

## COUNT IV
### Negligence
### (Plaintiff v. All Defendants)

141.    Plaintiff incorporates all previous paragraphs by reference as if they were stated herein.

142.    At all times relevant hereto, Defendants owed Plaintiff a duty to protect him from inmate-on-inmate sexual assaults while he was a prisoner at SCI Huntingdon.

143. At all times relevant hereto, Defendants individually and jointly breached that duty.

144. Defendants Wetzel, Kauffman and Biser Sipple failed to properly train, supervise and discipline the Initial Review Committee, the Unit Management Staff and the Correctional Officers on how to identify potential perpetrators and potential victims of inmate-on-inmate sexual assaults and to prevent them from being cellmates.

145. Defendants Wetzel, Kauffman and Biser Sipple also failed to create and implement policies to re-evaluate existing inmates for risks of sexually assaulting an inmate before housing them with a new inmate.

146. Defendants the Initial Review Committee, the Unit Management Staff and the Correctional Officers allowed Omar Johnson to be housed with Plaintiff despite knowing that Omar Johnson posed an immediate and substantial risk of serious harm to Plaintiff.

147. As a direct and proximate result of these breaches, Plaintiff suffered deprivations of his rights, physical injuries, pain and suffering, emotional distress, and mental anguish.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants and grant him all appropriate relief, including, but not

limited to, compensatory damages, court costs, punitive damages, attorney fees and all other relief as it deems appropriate.

**COUNT V**
**Intentional Infliction of Emotional Distress**
**(Plaintiff v. the Initial Review Committee, the Unit Management**
**Staff and the Correctional Officers)**

148.  Plaintiff incorporates all previous paragraphs by reference as if they were stated herein.

149.  At all times relevant hereto, Defendants the Initial Review Committee, the Unit Management Staff and the Correctional Officers acted intentionally and recklessly toward Plaintiff.

150.  Said Defendants' acts in deliberately placing Omar Johnson in Plaintiff's cell despite knowing that Omar Johnson posed an immediate and substantial risk of serious harm to Plaintiff caused Plaintiff to suffer severe and extreme pain and distress.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants the Initial Review Committee, the Unit Management Staff and the Correctional Officers and grant him all appropriate relief, including, but not limited to, compensatory damages, court costs, punitive damages, attorney fees and all other relief as it deems appropriate.

Respectfully Submitted,

**MINCEY FITZPATRICK ROSS, LLC**

/s/ Riley H. Ross III
Riley H. Ross III
Kevin V. Mincey
Two Penn Center
1500 JFK Blvd, Suite 1525
Philadelphia, PA 19102
***Counsel for Elisha Valdez***